## THE WM. SKINNER & SONS' SHIP-BUILDING AND DRY-DOCK COMPANY OF BALTIMORE CITY *vs.* CAROLINE S. HOUGHTON AND OTHERS.

*Fire Insurance—Loss After Contract of Sale and Before Conveyance— Right of Vendee to Proceeds of the Policies—Avoidance of Policy by Change in the Interest of the Assured.*

After a contract for the sale of real estate was made, but before payment of the purchase-money and execution of the conveyance, certain buildings on the land, covered by insurance, were destroyed by fire.   The proceeds of the insurance policies were claimed both by vendor and by vendee.   *Held,* that since after the making of the contract the vendor holds the property as trustee for the vendee, the latter, upon paying the purchase-money, is entitled in equity to the amounts paid by the insurance companies, and it makes no difference that the vendee intended to tear the buildings down.

Policies of fire insurance, in which the assured was represented as being the sole owner of the property, provided that they should be void if any change, other than by death, take place in the interest, title or possession of the subject of insurance.   The assured made a valid contract for the sale of the property and a loss by fire occurred after the making of the contract and before payment of the purchase-money. The vendee filed a bill in equity against the vendor (the assured) and several insurance companies, praying that the amounts due under the policies be paid to him.   Some of the defendant companies denied their liability ; others offered to pay to the person entitled, and one company paid the vendor.   *Held,*

1st. That the effect of the contract of sale was to vest the beneficial ownership of the property in the vendee and that consequently the policies were avoided, as to those defendants which denied all liability be-

cause of a change in the interest of the assured without the assent of the insurers.

2nd. That the plaintiff is not entitled to a decree against the company which had paid the assured, since he had the right, as trustee for the vendee, to collect the policy.

3rd. That the plaintiff is entitled to a decree against those companies which admitted their liability and offered to pay.

Appeal from a decree of Circuit Court No. 2, of Baltimore City (STOCKBRIDGE, J.), by which it was adjudged that the plaintiff had no claim, legal or equitable, to the funds arising from the policies of insurance mentioned in the proceedings.

The cause was argued before McSHERRY, C. J., FOWLER, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*William L. Marbury* and *George Weems Williams* for the appellant :

The plaintiff contends, *first*, that the vendor is a trustee for the vendee of the property contracted to be sold ; and, *secondly*, that he is, by virtue of that relationship, bound to account to the *cestui que trust* for the insurance money received by him as indemnity for the injury happening to the trust property. *Phelps, Equity Juris.*, sec. 207; *Rayner v. Preston*, L. R. 18 Ch. Div. 1; *Worthington v. Lee*, 61 Md. 530; *McRae v. McRae*, 78 Md. 283; *Story, Eq. Juris.*, secs. 789, 790; *Bispham, Equity*, secs. 95, 364.

If Mrs. Houghton was a trustee for the plaintiff of the buildings and improvements erected on or attached to the land under contract of sale, which buildings and improvements were destroyed by fire while that relationship of trustee and *cestui que trust* existed between herself and the plaintiff, she would be bound by well-settled principles of law to account to the plaintiff for any insurance money collected by her for the destruction of the trust property.  A trustee who insures the trust property, although the policy of insurance is issued in his own name and the premiums for the same are paid by him with his own money, cannot appropriate the proceeds of

the policy to his own use. *Joyce on Insurance*, sec. 627. Further, the principle is the same, no matter whether the trust is expressed or results from the relations between the parties. Note to *Lazarus* v. *The Commonwealth Insurance Co.*, 2 American Leading Cases, 841. Citing *Waters* v. *The Monarch Fire Ins. Co.*, 5 Ellis and Blackburn, 870, 880. It is simply the application of the familiar principle that whatever is received by a trustee by reason of his legal ownership of trust property inures to the *cestui que trust* for whom he holds the property.

It will be seen that our contention does not rest upon the proposition that the policies of insurance passed with the land contracted to be sold, but upon the theory that upon the execution of the contract Mrs. Houghton became the trustee of the property for the plaintiff. She did not insure only her interest as vendor in the property, but the whole interest legal and equitable, for the policies were issued before the contract of sale was entered into. How then can she claim the full amount of insurance money?

The contract of insurance is a contract of indemnity. Any proposition which is brought forward in accordance with which the contract of indemnity is not gratified, either by allowing the insured more or less than the actual loss sustained by him, must be wrong. In this case Mrs. Houghton was not damaged a cent's worth in her own individual capacity. She received every dollar of the purchase-price, although the purchaser did not receive in return what it contracted to buy. It contracted for land, buildings and wharf. It received the land and a large part of the buildings and wharf in ruins.

But her interest has by her own act been divided up into two parts, legal and equitable, and while, as against the insurance companies, she may recover for the whole interest as it was insured, still, as between herself and the plaintiff, she cannot retain any more of the insurance money than is necessary to cover her legal interest. *Joyce on Insurance*, sec. 3525; *Ins. Co.* v. *Updegraff*, 21 Pa. St. 513; *Hill* v. *Cumberland, etc., Co.*, 59 Pa. St. 474; *Parcell* v. *Grosser*, 109 Pa. St. 619;

*People's St. Ry. Co.* v. *Spencer*, 156 Pa. St. 90; *Farmers' Mut. Ins. Co.* v. *Graybill*, 74 Pa. St. 23; *Perry County Ins. Co.* v. *Stewart*, 19 Pa. St. 45; *Norcross* v. *Ins. Co.*, 17 Pa. St. 429; *Gilbert and Ives* v. *Port*, 28 Ohio St. 276; *Williams* v. *Lilly*, 67 Conn. 50; *LeClaire* v. *Crafser*, 5 Lower Canada, 487; *Grange Mill Co.* v. *Western Ass. Co.*, 118 Ill. 396; *Brewer* v. *Herbert*, 30 Md. 301; *Wash. Ins. Co.* v. *Kelly*, 32 Md. 421; *Callahan* v. *Linthicum*, 43 Md. 97; *Bowdoin* v. *Hammond*, 79 Md. 173; *Bath Paper Co.* v. *Langley*, 23 S. C. 129. In *Conn. Ins. Co.* v. *Scammon*, 126 Ill. 355, the Court recognized the right of a mortgagor to recover money received by a purchaser from an insurance company, under a policy covering the mortgaged property, the sale by virtue of which the purchaser acquired title, having, after the happening of the loss, been set aside and declared void. See also *Mitchell* v. *McDougall*, 62 Ill. 498, 67 Ill. 43; *Green* v. *Green*, 50 S. C. 514, 46 L. R. A. 525; *Sampson* v. *Bagley*, 44 L. R. A. 711; *Gates* v. *Smith*, 4 Edw. Ch. (N. Y.) 702.

In order to discuss the first branch of the defense of the two companies which deny their liability, it becomes necessary to inquire into the nature and effect of a contract to sell real estate, and then to find out if possible whether the provision against change of interest was intended by the parties to the contracts of insurance to prevent the insured from contracting to sell the property insured without forfeiting her insurance. A contract to sell real estate does not give the vendee named therein any property right or interest in the land he thereby agrees to purchase before he performs or offers to perform his part of the contract, in accordance with its terms and conditions. As the Court said in *Turnbull* v. *The Portage County Mutual Ins. Co.*, 12 Ohio, 314: "At law, this contract (referring to a contract to sell real estate) did not transfer any right in the land and in equity, the purchaser can only enforce a transfer after he shall have laid a proper basis, by paying the purchase-money." *Wheeling Ins. Co.* v. *Morrison*, 11 Leigh, 354.

The fact that the vendor has the ability to convey to a

third party without notice, the property he has contracted to sell, and that by the conveyance the grantee named therein gets a title to the property absolutely good, so far as the disappointed vendee is concerned, shows, that such vendee has no interest in the property thus conveyed so long as the contract is in *fieri* If he had an interest, he could not be deprived of it, without his consent, by the man who sold him the interest. In other words, the vendor could not sell what he did not have. If the vendee, by the mere signing of a contract of sale, obtained an interest in the land he agrees to purchase, how does that interest revert back to the vendor, or to his grantee, without some act of the vendee ?

Equity has never declared that for all purposes and under all circumstances a contract to sell real estate is practically the same thing as a sale of real estate. On the contrary, as regards strangers to the contract, land agreed to be sold is the land of the vendor until he gives a deed for it, executed, etc., in accordance with the provisions of our statute law on conveyancing. That this equitable doctrine only applies as between the parties to the contract—see *Hill* v. *Cumberland Valley Mutual, etc., Co.*, 59 Pa. St. 474; (cited in *Planters M. Ins. Co.* v. *Rowland*, 66 Md. 236, 243.) *Bowie* v. *Berry*, 3 Md. Ch. 362 ; *McRae* v. *McRae*, 78 Md. 283.

In this case the vendee has an insurable interest, but the vendor had not only an insurable interest, but the proprietary interest in the property sold. Further, there can be no doubt that her insurable interest was exactly the same at the time these policies were issued and when the loss occurred, to wit, the whole value of the property. "Change of interest," as used in the polices, evidently means proprietary interest in the property insured, and not any change which may occur in insurable interest. Ordinarily a policy is not avoided by either a diminution in the insurable interest of the insured or by the fact that such insurable interest has not remained identical. *Biddle on Insurance*, sec. 203. *Joyce on Insurance*, sec. 904. We therefore maintain that the execution of the contract of sale by itself had no effect upon the proprietary interest of the insured. *Walradt* v. *Phoenix Ins. Co.*, 136 N. Y. 375.

Accordingly, we contend that if "unconditional and sole ownership" is the "interest" which the insured must possess, in order to give the policy vitality, when it is issued, that as long as the "interest" of the insured is the "unconditional and sole ownership" the policy retains its vitality.    If this be true, can it be denied that Mrs. Houghton was the unconditional and sole owner upon the day of the fire, giving to those words their usual meaning, although prior to that day and during the existence of the policy she had contracted to sell the insured property at some future day?    Suppose, for example, Mrs. Houghton had applied for insurance to the defendant companies after she had made the contract with the plaintiff, and failed to disclose to them the existence of the contract, could those companies, having issued to her policies, similar to the ones they actually did issue to her, refuse to pay upon the happening of a loss and successfully insist that the policies were void, because Mrs. Houghton was not the " unconditional and sole owner " at the time of the issuance of the policies?    In such a case the insurance companies would be answered by saying that the insured was the unconditional and sole owner of the insured property ; and further, that if they wanted to know whether the applicant for insurance had made a contract to sell the property she desired to insure, they should have asked her the question in plain and intelligible language, and not have taken her premiums until the happening of a loss, and then rely upon the indefiniteness of the phraseology used by them in contracts drawn up by themselves to defeat their liability.    The contract of sale upon which the resisting insurance companies are relying shows conclusively that Mrs. Houghton did not intend to part with her " unconditional and sole ownership " of the insured property on the day the contract was made, but, on the contrary, agreed to sell it on a future day.

If the mere making of the executory contract of sale effected a " change in interest," then the policies by their terms were " *void.*"    The position of the insurance companies, unless they can show that the mere execution of a con-

tract to sell avoids the policies, must be that the contract to sell made the policies voidable, that is, they would become void if the parties to the contract of sale carried it out but valid if the same was not performed. This cannot be maintained for the reason, in addition to those already stated, that the policies do not contemplate such a condition of things. The policies require some certain definite act prior to the happening of the loss, which will strike a death blow to their existence. Unless the insurance companies can point to an act or event of that character, the policies are still valid and binding on them.

Further, it cannot be presumed that the parties to the contracts of insurance intended that the act of the vendor or the joint act of the vendor and vendee could resuscitate the policies after they had been lifeless ; and yet such would be the effect if the life or death of the policies depends upon the performance of the contract to sell by the parties thereto. For if the performance of the contract to sell is necessary to avoid the policies of insurance, then the vendor, by conveying the property (agreed to be sold) to some innocent third party, after the happening of the loss, thus making it impossible for him to perform his contract, vitalizes the policy which, but for his bad faith, would, under the construction put forward by the insurance companies, have been void. In the same manner the vendor and the vendee could by simply making a new contract, and annulling the old one after the fire, make valid a policy which otherwise would be void.

Many of the Courts construe these "alienation clauses," as they are called, simply as the embodiment in the policies of the familiar principle of law, that in order to prevent "wagering contracts" the law will not enforce a policy when the insured has parted with his interest in the subject of insurance. These Courts accordingly hold that an absolute alienation and transfer of the insured property are necessary to make the alienation clause effective, and that as long as the insured retains an insurable interest the policy is valid and binding. *Washington Fire Ins. Co.* v. *Kelly*, 32 Md. 421; *Grable* v. *Ger-*

*man Ins. Co.*, 32 Neb. 645; *Perry County Ins. Co.* v. *Stewart*, 19 Pa. St. 45; *Trumble* v. *Insurance Company*, 12 Ohio 305; *Kempton* v. *State Insurance Company*, 62 Iowa, 83; *Hill* v. *Cumberland Valley, etc., Co.*, 59 Pa. St. 474, 478; *Reed* v. *Lukens*, 44 Pa. St. 200.

The cases construing clauses identical or similar to the one under discussion have almost uniformly decided against the views urged by the counsel of the defendant companies. The following cases construed policies in which the word "interest" or some similar term was used in the alienation clause : *Pringle* v. *Des Moines Insurance Company*, 77 N. W. Rep. 521, (Iowa, 1898); *Lodge* v. *Ins. Co.*, 91 Iowa, 103; *Phœnix Ins. Co.* v. *Lawrence*, 4 Met. (Ky.) 9.

In *Koshland* v. *Hartford Fire Ins. Co.*, 49 Pac. Rep. 866, the Supreme Court of Oregon held that a subsequent mortgage on property covered by a policy of insurance is not violative of a provision therein identical with the provision in the policies in the case at bar. In *Collins* v. *Assurance Corp.*, 165 Pa. St. 298, the Court decided that a sheriff's sale of the insured property did not render void a policy which contained a clause providing against "any change in interest, title or possession," because the purchaser at such sale had only an *inceptive interest* in the property before the deed was delivered. In *Jecko* v. *St. Louis F. & M. Ins. Co.*, 7 Mo. Ap. 308, it was held that a clause in a policy against "transfer or termination of interest" was not violated by the execution of a conveyance of the insured property, which was absolute on its face, but which was intended only as a mortgage. In *Commercial Ins. Co.* v. *Spankable*, 52 Ill. 53, the Court decided that the placing of a mortgage on the insured property did not bring into effect a clause in the policy against change of interest. In *Judge* v. *Conn. Fire Ins. Co.*, 132 Mass. 521, the Court held that the mortgaging of the insured property was not such a change in title and interest as avoided the policy, which provided against a change "in the title, interest, location or possession of the property   *   *   *   whether by sale, transfer or conveyance, in whole or in part." In *Green* v. *Home-*

*stead Fire Ins. Co.*, 82 N. Y. 517, it was decided that the filing of a mechanics' lien against an insured property did not effect any change of interest within the meaning of a policy providing that the insurance company should not be liable for any loss to the insured property "if the interest of the insured therein be changed in any manner, whether by the act of the insured, or by operation of law." See also *Wood* v. *American Fire Ins. Co.*, 44 N. E. 80, (N. Y., 1896.)

For the construction of alienation clauses more or less similar to the one under discussion, see *Encyclopedia*, 2nd ed., vol. 13, pages 247–248. *Hanover Fire Ins. Co.* v. *Brown*, 77 Md. 64; *Germania Fire Ins. Co.* v. *Stewart*, 13 Ind. Ap. 627; *Jones* v. *Capital City Ins. Co.*, 25 S. Rep. 790; *Insurance Co.* v. *Updegraff*, 21 Pa. St. 513; *Reed* v. *Lukens*, 44 Pa. St. 200; *Hill* v. *Cumberland Valley Mut., etc., Co.*, 59 Pa. St. 474; *Perry County Ins. Co.* v. *Stewart*, 19 Pa. St. 45; *Farmers Mut. Ins. Co.* v. *Graybill*, 74 Pa. St. 17; *Home Ins. Co.* v. *Bethel*, 142 Ill. 537; *Masters* v. *Madison County Mut. Ins. Co.*, 11 Barb. 624; *Kempton* v. *State Ins. Co.*, 62 Iowa, 83; *Haight* v. *Continental Ins. Co.*, 92 N. Y. 51; *Browning* v. *Home Ins. Co.*, 71 N. Y. 508 ; *Hammel* v. *Queen's Ins. Co.*, 54 Wis. 84.

In most, if not all of these cases, there had been a contract to sell the insured property. In some of the cases cited above, the Courts (as in *Browning* v. *Home Ins. Co.*, 71 N. Y. 508), expressly decided that an executory contract of sale did not violate a clause providing against change of title or possession. If a contract of sale does not avoid a policy prohibiting change of *title* or possession, why should such a contract bring about a change *in interest ?* The only answer to this would be made by bringing forward the equitable doctrine already discussed. But this would not be a sufficient answer, because the doctrine thus brought forward makes as much *change in title* as it does in *interest*. *Kelly's case*, 32 Md. (*supra*), if closely examined, is authority for our position.

The other defence set up by the insurance companies which deny all liability under the polices issued by them, is that the insured having been paid the full purchase-price by the plain-

tiff, suffered no loss by the fire, and is not entitled to indemnity. Practically this same defence was made by the defendant insurance companies in *Kelley's case*, 32 Md. 421.

The fact that an insured receives from a stranger a sum of money equal to the damage done to his property by fire does not relieve the insurer, whose contract it is to make good that damage. *Joyce on Insurance*, sec. 3742; *Hanover Fire Ins. Co. v. Brown*, 77 Md. 64.

In view of the foregoing considerations and authorities we respectfully submit that the following propositions are established:

(a.) That if a contract to sell real estate is performed in accordance with its terms, equity will consider the vendor to have been the trustee for the vendee of the lands agreed to be sold, and the buildings situated thereon, from the date of the contract to the date of its performance.

(b.) That the vendor, being the trustee for the vendee, cannot retain any money received under a policy of insurance covering the trust property, and not merely his interest as vendor in the trust property, if he has suffered no loss except as trustee.

(c.) That the vendee cannot release his rights to the proceeds of the policies of insurance covering the trust property, which rights were required by reason of the relationship of trustee and *cestui que trust* created by the contract of sale except by contract or estoppel.

(d.) That as a corollary to proposition C, no evidence is admissible to affect the rights of the vendee to the proceeds of the insurance, except evidence tending to establish an estoppel or a contract.

(e.) That if any insurance company, after it has received notice from the vendee of his claims to the proceeds of the policy issued by it, and disregards such notice, and with full knowledge of the circumstances, pays over the amount due on its policy to the vendor, such insurance company is liable to the vendee for the amount so paid over.

(f.) That proposition A only applies as between the parties to the contract of sale.

(g.) That a contract to sell real estate is not such a change in the insured's interest in the buildings erected thereon and insured as will make void a policy of insurance, providing against change in interest, title or possession.

(h.) That the fact that à vendor has received the full purchase-price for the insured property does not relieve an insurance company from the liability under a policy issued by it to pay the loss suffered by the property.

*Michael A. Mullin* and *W. W. Parker*, for Caroline S. Houghton, appellee :

This appellee contends that the executory contract of sale, between her and the appellant company at the time the fire occurred, did not constitute such a change in her interest, title or possession of the property as to render void the insurance policies existing in her name upon such property under the clause in the policies, to the effect that "any change in interest, title or possession of the subject of insurance" should render the policies void.   Heretofore, when the question has arisen relative to insurance policies containing a clause avoiding same for any change in title or possession, etc.—but omitting the word *interest*—the unanimous decision in America has been that an executory contract existing between the assured and a third party, at the time of the fire destroying the property insured, was not such a change as to avoid the particular policy. *Ayers* v. *Harford Fire Ins. Co.*, 17 Iowa, 184–185; *Cowan* v. *Iowa St. Ins. Co.*, 40 Iowa, 553; *Shotwell* v. *Jefferson Ins. Co.*, 5 Bosw. 257–282; *Kelly* v. *Washington Fire Ins. Co.*, 32 Md. 421; *Callahan* v. *Linthicum*, 43 Md. 104; *Ins. Co.* v. *Roland*, 66 Md. 242; *Ins. Co.* v. *Brown*, 77 Md. 72.

And in cases construing the standard policy, containing a clause as to change of interest, etc., similar to the clause in question in this case, the uniform decision has been that the insertion of the word *interest* in such clause can have no greater effect, because it is practically synonoymous with the word "title," and adds nothing to such clause.   Accordingly, in cases where the standard policy has been construed, we find

that an executory contract of sale, etc., existing as did the one in this case, has been uniformly decided not to effect such a change of "interest," "title," etc., in the insured as to avoid the policy of insurance. *Wood* v. *American Fire Insurance Co.*, 44 N. E. R. 81; *Waldradt* v. *Phœnix Ins. Co.*, 136 N. Y. 378–380 ; *Judge* v. *Connecticut Ins. Co.*, 132 Mass. 523; *Erb.* v. *Germ. Am. Ins. Co.*, 98 Iowa, 613–614; *Koshland* v. *Hartford Fire Ins. Co.*, 49 Pac. R. 865–867; *Home Ins. Co. of New York* v. *Bethel*, 142 Ill. 544–547; *Pringle* v. *Des Moines Ins. Co.*, 77 N. W. R. 521–522; *Lodge* v. *Capital Ins. Co.*, 91 Iowa, 106–107; *Browning* v. *Home Ins. Co.*, 71 N. Y. 508.

Mrs. Houghton alone, and not the appellant company, is entitled to any and all proceeds of the several policies of insurance upon the property destroyed by fire. The insurance policies existing in her name were her *personal* contracts, to which the appellant company was in nowise entitled. They were not incidents to the land—did not run with the property —and in a conveyance did not follow a transfer of the realty. *Carpenter* v. *Providence Washington Ins. Co.*, 16 Pet. 496; *City of Norwich*, 118 U. S. 494; *Heller* v. *Marine Bank*, 89 Md. 621.

If, as is contended, the vendor held the property in trust for the vendee under the equitable rule to that effect, even then such rule would not affect the insurance policies, they being not incidents of the realty, but distinct collateral agreements between Mrs. Houghton and the insurance companies. Cases above. *Rayner* v. *Preston*, 18 Ch. Div. 1. Hence, the insurance policies being *personal* contracts with Mrs. Houghton, who alone has paid the premiums thereon, and not being in any manner incidental to the land contracted to be sold, Mrs. Houghton solely is entitled to the proceeds arising upon the destruction of the property by fire. *Carpenter* v. *Providence Washington Ins. Co.*, 16 Pet. 503–508; *Ætna Fire Ins. Co.* v. *Tyler*, 16 Wend. 397; *Baltis* v. *Dolin*, 67 Barb. 509; *Reid* v. *McCrum*, 91 N. Y. 412; *Dunlap* v. *Avery*, 89 N. Y. 597–599; *Grable* v. *German Ins. Co.*, 32 Neb. 645; *Chipman* v. *Carroll*, 25 L. R. A. 305 (note.)

There have been a number of cases containing facts some-

what similar to the facts in this case, in which the decisions are
supposed to be in opposition to this view.   *Gates* v. *Smith*, 4
Edw. Ch. 490 ;  *Gelton* v. *Brooks*, 4 Cush. 203;  *Norcross* v. *Ins.
Co.*, 17 Pa. St. 429;  *Ins. Co.* v. *Updegraff*, 21 Pa. St. 513;  *Reed*
v. *Lukens*, 44 Pa. 200.    But in all these it will be found that
there the decisions were based upon some agreement between
vendor and vendee as to the proceeds of the insurance policies.
*Cromwell* v. *Brooklyn Fire Ins. Co.*, 44 N. Y. 42;  *Callahan* v.
*Linthicum*, 43 Md. 104.

Two of the insurance companies invoke the equitable doc-
trine of subrogation as a defense to the claim of Mrs. Hough-
ton.    For the purposes of this defense they necessarily con-
cede the liability to Mrs. Houghton for the loss incurred by
the fire.    This loss, however, they propose to pay with the
purchase-money which she has already collected from her
vendee.    And for the purpose of the same defense they deny
all liability to the vendee.    Hence, from the very liability which
they concede, they would escape by the defense itself without
the payment of a cent.    In like manner, they deny that the
vendee can be subrogated to the rights of the vendor against
them, yet maintain that under the same contracts, and on the
same facts, they should be subrogated to the rights of the ven-
dor against the vendee.    Again, the doctrine of subrogation
presupposes a payment under the insurance obligation as a
condition to the substitution to the rights of the primary
creditor.    Here there is no such payment, and the substitution
is attempted in advance of any payment by a circuit of argu-
mentation.    The defense is, therefore, practically and in effect
nothing but a denial of the liability which it started out by
conceding.

The fallacy of the defense is that as the parties have no
privity, the contracts no connection, there is only one thing
in common, viz., that the same property is mentioned in two
contracts entirely dissimilar and having no connection, as much
so as if the owner of a house had made with a carpenter a
contract for repairs, and then sold the property.    Would any
one in such case have claimed that the carpenter was subro-

gated to the vendor's claim for the purchase-money? Yet in each case the contracts would relate to the same house. The case of *Castillain* v. *Preston*, on appeal, 11 Q. B. Div. 380, stands by itself. In *Hall* v. *Nashville, &c., R. R. Co.*, 13 Wallace, 367, cited *supra*, the Supreme Court bases the insurer's right to subrogation on his position as an implied surety, so that on payment of the insurance money he acquired *the remedies* of the insured against third parties. So, in *Simpson* v. *Thomson*, 3 App. Cas. 284, LORD CHANCELLOR CAIRNS puts it on the same ground: "I know of no foundation for the right of underwriters, except the well-known principle of law, that where one person has agreed to indemnify another, he will, on making good the indemnity, be entitled to succeed to all the ways and means by which the person indemnified might have protected himself against, or reimbursed himself for the loss." So does CHITTY, J., in the trial of *Castillain* v. *Preston*, below, (8 Q. B. Div. 624.)

But the question is fully raised, ably discussed and settled in Maryland by the decision of the Court in *Washington Fire Ins. Co.* v. *Kelly*, 32 Md. 443, 458-459.

*Frank Gosnell* and *Edgar Allan Poe*, (with whom was *John P. Poe* on the brief), for the German American Ins. Co., of New York, and the Merchants' and Manufacturers' Ins. Co., of Baltimore, appellees.

These companies resist payment either to the Skinner Company or to Mrs. Houghton on four grounds :

1st. Because a contract of fire insurance is a personal contract, and being a personal contract the Skinner Company not being a party to the contract cannot recover under it. *Heller* v. *Marine Bank*, 89 Md. 621.

2nd. Because a contract of fire insurance is a contract of indemnity only, and since Mrs. Houghton has suffered no loss by reason of the fire, the full purchase price of the property having been paid her notwithstanding the fire, she is therefore not entitled to reimbursement from the insurance companies. *Franklin Ins. Co.* v. *Hamill*, 6 Gill, 95; *Kelly's case*, 32

Md. 442; *Heller* v. *Marine Bank*, 89 Md. 621; *Castillain* v. *Preston*, 11 Q. B. D. 380, 386, 393, 401; *Keefer* v. *Phœnix Ins. Co.*, 26 Ontario Appeal, 277; *Ætna Ins. Co.* v. *Tyler*, 15 Wendell, 397.

3rd. Because there was an entry upon the policies, " loss, if any, payable to the Safe Deposit and Trust Company of Baltimore, trustee, mortgagee, as interest may appear," and the effect of such an entry was the same as though the policies had been originally taken out by the mortgagee ; and, therefore, since the mortagage debt has been paid by the mortgagor, all liability under the policies ceased. *National Fire Ins. Co.* v. *Crane*, 16 Md. 260; *Hanover Co.* v. *Brown*, 77 Md. 76; *Callahan* v. *Linthicum*, 43 Md. 109; *Carpenter* v. *Providence Co.*, 16 Pet. 501.

4th. Because by the sale of the property on April 15, 1899, without the consent of the insurance companies, there was such a "change of interest" on the part of Mrs. Houghton in the subject of insurance as avoided the policies by their very terms. 13 *Am. & E. Ency. Law*, 2nd. ed. 239–241; *Kelly's case*, 32 Md. at p. 451; *Brewer* v. *Herbert*, 30 Md. 308; 59 Minn. 267, 2 Hun. 540, 51 Me. 110; *Horse* v. *Prescott Ins. Co.*, 11 L. R. A. 340.

BOYD, J., delivered the opinion of the Court :

On the 18th day of February, 1899, Caroline S. Houghton and her husband entered into an agreement with Charles E. Savage by which they agreed to sell and convey to him or his assigns, upon written notice of the acceptance of the agreement within sixty days from its date, certain property in the city of Baltimore for the sum of fifty thousand dollars. It was agreed that the purchaser should pay the purchase-money within ninety days after the notification of the acceptance and two hundred dollars, paid when the agreement was made, was to be credited on the amount. Within the sixty days (on April 14th), Savage assigned his option to the appellant and notified Mr. and Mrs. Houghton of his acceptance and assignment, to which they gave their assent. On the 11th day of May, 1899,

some of the improvements on the property were destroyed by fire, having been insured in eight companies prior to the execution of the agreement.   At the time of the fire the Houghtons were still in possession of the property, none of the purchase-money, except the two hundred dollars, had been paid, and the deed had not been executed, but on the 27th of June, 1899, the balance was paid and a deed was executed and delivered.  At that time the Houghtons and the appellant entered into an agreement that the payment of the purchase-money and acceptance of the deed should not waive any right appellant might have to any moneys to be thereafter collected from insurance companies under the policies covering the property destroyed.

Proofs of loss were duly furnished by Mrs. Houghton, and the eight companies were about to pay her the amounts ascertained to be due by them respectively, when the appellant notified them of its claim to the amounts due.   The Westchester Fire Insurance Company, of New York, paid the amount due by it to Mrs. Houghton.   The Norwich Union Fire Insurance Society, of England; the Howard Fire Insurance Company, of Baltimore City; the Commerce Insurance Company, of Albany, New York ; the Royal Exchange Assurance, of London, and the Pacific Fire Insurance Company, of New York City, filed bills of interpleader offering to pay the amounts due by them to the party entitled thereto, and the German American Insurance Company, of New York, and the Merchants' and Manufacturers' Fire Insurance Company, of Baltimore City, denied all liability for reasons, some of which will hereafter be stated.  The appellant filed a bill in equity against the Houghtons and the several insurance companies, praying that the companies be enjoined from paying the amounts to Mrs. Houghton, and that she be enjoined from collecting them ; that Mrs. Houghton and the Westchester Company be required to account for the amount paid by that company to her ; that the companies discover and set forth in detail all sums of money due under said policies issued by them ; that the said companies be required to pay to the plaintiff the amounts due by

them ; that Mrs. Houghton be required to bring into Court
the policies to be delivered to the companies upon payment of
the money to the plaintiff and for further relief. The Hough-
tons demurred to the bill, and the demurrer having been over-
ruled, answered, claiming the money was due Mrs. Houghton.
The Westchester Company admitted payment to Mrs. Hough-
ton and denied any liability to the plaintiff; the five companies
mentioned above alleged that they had filed bills of interpleader
which were still pending, and the other two denied any liability.
The Palatine Insurance Company, Limited, of Manchester,
England, filed a petition asking to be made a party, as it had
assumed the obligations and liabilities incident to and growing
out of certain policies issued by the Merchants' and Manu-
facturers' Insurance Company, of Baltimore, and it was so
ordered. Testimony was taken, and after hearing the bill of
complaint was dismissed, the learned Judge who heard the case
being of the opinion that the plaintiff had no claim to the
funds arising from the policies of insurance.

The facts we have stated, and others that will be hereafter
referred to present several questions for our consideration.
The points raised by the demurrer to the bill filed by the
Houghtons were not pressed in this Court, and we understand
it to be the desire of all parties to have their rights determined
in this cause. We are not informed by the record of the con-
dition of the cases in which bills of interpleader have been
filed, but as those companies could, if they saw proper, waive
such defenses as the two contending companies have inter-
posed, and pay the proportion of the insurance claimed from
them to the vendor or vendee, as may be determined, and as
we understand that to be the position taken by them, we will
first consider the questions between the appellant and Mrs.
Houghton.

1. Leaving out of view, for the present, the effect of the
testimony in relation to the interviews of the president of the
appellant company and Ira Houghton, the first inquiry to be
made is : As between the appellant and Mrs. Houghton, who
is entitled to such of the proceeds of the insurance policies as

has been or will be collected? There is nothing in the record to suggest that the property enhanced in value between February 18, 1899, the date of the agreement, and May the 11th, 1899, the time of the fire. Nor is there anything from which we can infer that the price named in the agreement was not the full value of the property sold. Therefore no equities of that character are suggested, even if they could be considered. As the purchase-money was paid in full, it is manifest that any amount Mrs. Houghton might receive from the insurance companies would be that much more than, by the terms of the agreement, she could have expected to get out of the property. On the 14th of April, the total moneyed interest she had in the property was fifty thousand dollars, less the two hundred dollars already paid, as by her agreement she had parted with all interest she had in it on payment of that sum. It is true she had an insurable interest in the property until the purchase-money was paid, but that was all she had in equity, and as this is a case in equity we must determine it from that standpoint, and it is unnecessary to discuss the rights of the parties as viewed by courts of law. When she took out the policies, she was the sole owner of the property, but when the option was accepted her estate was divided into a legal and an equitable one. From that time she held the title as trustee for the appellant, under an obligation to convey it to it, upon payment of the purchase-money. Under a contract of this kind, in equity, " the vendee is in fact considered as the owner of the land, and although the vendor may still retain the title, he holds it as a trustee for the vendee, to whom all the beneficial interest has passed, with a lien on the estate as security for any unpaid portion of the purchase-money." *McRae* v. *McRae*, 78 Md. 283. Or, as was said in *Worthington* v. *Lee*, 61 Md. 535, " While at law contracts are covenants to sell, lease or convey land are considered simply as personal and executory contracts, and covenants without reference to any trust or charge thereby created, yet, in the contemplation of a Court of equity, from the time of the contract or covenant, the vendor or lessor, and his heirs, or assigns,

except where the latter may be protected for want of notice, are regarded as trustees for the vendee or lessee, and those who may represent him." In *Phelps' Juridical Equity*, section 207, the learned author announces the same rule with clearness, referring to *McRae* v. *McRae* and other authorities.

After a contract of sale is made, the vendor's interest is not real estate, and in case of his death the unpaid purchase-money is personal property and goes to his personal representatives. *Hall* v. *Jones*, 21 Md. 439; *McRae* v. *McRae, supra*. A judgment obtained by a third person against the vendor between the time of the making of the contract and the payment of the purchase-money does not defeat or impair the equitable interest thus acquired by the vendee, nor is it a lien on land to affect the rights of such *cestui que trust*. *Hampson* v. *Edelen*, 2 H. & J. 64; *Valentine* v. *Seiss*, 79 Md. 190. When, therefore, the purchase-money is paid to the vendor and all *his* interest in the property insured is extinguished, upon what principle should he be entitled to recover for himself any additional sum, paid by reason of the destruction of the property which he had already been paid for ? It would not only be contrary to .the well-established principle of the law which prohibits a trustee from using the trust property for his personal gain, but it would be contrary to public policy to subject a vendor, remaining in possession, to the temptation of either destroying the property by fire or of being guilty of such gross negligence concerning it as might produce that result. It is true that a policy of insurance against loss by fire is only a personal contract of indemnity, but that indemnity is " against a possible loss on account of the interest of the insured in the thing mentioned in the policy," (*Heller* v. *Marine Bank*, 89 Md. 621), and when that interest no longer exists the indemnity. is likewise at an end, so far as he is concerned. When the purchase-money is paid, the vendor can sustain no loss by reason of the destruction of the property by fire, but that is not so with the vendee. This Court held in *Brewer* v. *Herbert*, in 30 Md. 301, that in case of loss by fire between the time of the contract of sale and the payment of the pur-

chase-money, the vendee must bear the loss and in that case the contract of purchase was enforced at the instance of the vendor by a Court of equity.

Without reference to the authorities it would seem to be manifestly just and equitable that when a Court of equity is called upon to determine to which of the two parties a fund is to be paid, resulting from the destruction of a property in which both *were* interested, but the one has received payment from the other of all the interest she had, while the other is to be the sufferer by reason of the destruction of the property, that it should be awarded to the latter.   If that be not so, the one would receive more than the contract contemplated, while the other would receive less.  For example, if the value of the property, worth, at the time of the sale, fifty thousand dollars, has been lessened by the fire to the extent of fifteen thousand dollars, the vendor would get sixty-five thousand dollars, and the vendee would get a property worth only thirty-five thousand dollars—the one thus getting thirty per cent more and the other thirty per cent less than they originally contracted for, under Mrs. Houghton's contention.

Such results would not only encourage carelessness in the use of property by vendors, but would materially increase the danger of incendiarism. The policy in the record, which we understand to be a copy of the others and is what is called a "standard policy," gives the insurance company the option of repairing, replacing or rebuilding the property destroyed instead of paying the money.   If that was done then the purchaser, and not the vendor, would necessarily get the benefit of it, and while it is correct to say that a fire insurance policy is a personal contract of indemnity, the subject matter of the insurance is the property and the indemnity is against loss by fire as to that and nothing else. When the insurance was taken, Mrs. Houghton owned the property, and the policies were never changed so as to only insure the debt she had against the property, and as the indebtedness to her is extinguished and all her personal interest in the property is gone, she must hold any money she has received, or may yet re-

ceive, in the only other way she could hold it, namely, as trustee for the vendee. It must be remembered we are not now considering the question between her and the insurer, but between her and the owner of the property insured. As she no longer had any interest of her own in that property for which she can receive indemnity, it must be assumed that she took it for her *cestui que trust.*

But we are not without authorities on the identical question. In *Brewer* v. *Herbert, supra,* this Court said on page 313, in speaking of a policy the vendor had permitted to lapse after the sale but before the fire, "If the policy had existed at the time of the loss, the vendor could have recovered from the insurance company, but being trustee of the premises for the vendee, he would be bound in equity to account to the latter for the money so received." That cannot properly be said to be an *obiter dictum,* for it was said in considering the effect of the failure of the vendor, to continue in force a policy on the property, on his right to specific performance of the contract. Even if it could not be regarded as the judgment of the whole Court, it would be entitled to great consideration, as the opinion of the learned jurist who delivered it, but he was not announcing a principle that others have refused to adopt or follow. In *Joyce on Insurance,* section 3525, it is said : "If property is destroyed between the time of effecting the contract for the sale and delivery of the deed, the proceeds of an insurance policy upon such property belongs to the vendor as between him and the company, but the former is held to act as trustee for the vendee and must therefore account to his *cestui que trust* in equity." To the same effect are the cases of *Insurance Company* v. *Updegraff,* 21 Pa. St. 513; *Reed* v. *Lukens,* 44 *ib.* 200; *Hill* v. *Insurance Company,* 59 *ib.* 474; *Purcell* v. *Grosser,* 109 *ib.* 617; *Gilbert* v. *Port,* 28 Ohio St. 276; *Williams* v. *Lilly,* 67 Conn. 50.

In *Rayner* v. *Preston,* L. R. 18 Ch. Div. 1, a contrary view was adopted by two out of the three Lords Justices who sat. One of them expressly repudiated the doctrine that a vendor was under such circumstances as we have referred to, a trus-

tee for the vendee, and the other admitted that he was in a qualified sense, but said he could not be trustee of the money recovered. LORD JUSTICE JAMES recorded his dissent in a vigorous and convincing opinion which, as to the relation of the parties being that of trustee and *cestui que trust,* is in accord with our own decisions as well as the great weight of authority in this country. The case of *Carpenter* v. *P. W. Insurance Co.,* 16 Peters, 496, relied on by the solicitors for Mrs. Houghton, does not militate against the contention of the appellant. There a mortgagee obtained insurance to secure his debt and nothing more. In *Callahan* v. *Linthicum,* 43 Md. 97, this Court quoted at length from that decision and adopted the rule therein expressed, but the facts were different in the two cases and hence different results were reached. In *Callahan* v. *Linthicum,* the appellee sold the property to the appellant and took a mortgage to secure the balance of the purchase money. Before the sale the appellee had insured the property and when he conveyed it to the appellant the insurance was continued under the same policy' in the same manner and for the same amount as before. This Court said; "While it may be conceded that this arrangement could not give to the appellant the right to sue at law upon the policy, for want of legal privity with the contract of insurance, yet, under such circumstances, the mortgagee would be treated in a Court of equity as trustee for the mortgagor, and in the event of the payment of the mortgage debt by the latter, he would be entitled to maintain a suit in equity, to recover the money received by the former under the policy of insurance," and cited *Insurance Company* v. *Updegraff* and *Reed* v. *Lukens.* Nor is the case of *Heller* v. *Marine Bank* in conflict with the doctrine we have announced. It was said there that "such personal contracts of indemnity do not attach to the realty or in any manner go with the same, as incident, by any conveyance or assignment, unless there is, in addition, some special stipulation to that effect between the insurer and insured." But the appellant does not claim the proceeds of these policies on the theory that they attached to the realty and therefore passed

to it as purchaser, but it is because Mrs. Houghton, by the contract of sale, became the trustee of the property for the appellant and, although the contract of indemnity was continued with her, it was for the benefit of her *cestui que trust*, as well as for herself. When all she was entitled to was paid, the proceeds to be derived from the policies, as between the appellant and herself, belonged to the former. If the insurance money had been paid her before the purchase-money was paid, she could only have demanded the difference, and when the purchase-money was paid it was with the express agreement that it should not prejudice the claim of the appellant to that fund. Without discussing other cases relied on by the counsel for Mrs. Houghton, it is sufficient to say that those which do at all apply to this question are not sufficient to overcome the cases we have cited above and the reasoning contained in them.

2. The next question is, what is the effect of the testimony in reference to the conversations between Mr. Skinner, the president of the appellant, and Mr. Ira Houghton, the agent of his mother, the vendor ? The substance of them is that after the option was accepted and before the fire Mr. Houghton asked Mr. Skinner if he would take these policies of insurance and he replied that he would not, that he intended to tear the buildings down. Mr. Houghton also testified that he said to Mr. Skinner " We have insurance on that property, shall I figure the adjustment up and the rebates of the premium ?" to which he replied " No, you cancel the insurance because I will not use it;" and then he (Houghton) said, "Well, I will keep it insured for mother's interest until the sale has been consumated," and Mr. Skinner said " that was right." This evidence was admitted subject to exceptions and the Judge refused to strike it out. We do not deem it necessary to discuss its admissibility, as under the circumstances we do not think it affects the result between the vendor and purchaser. In answer to the question whether he meant to say that the conversation never occurred, as related by Mr. Houghton, Mr. Skinner said "I shouldn't like to say that Mr.

Houghton was telling what is not so, but I have no recollection of that conversation and it certainly would be something that would impress itself upon my mind if it had occurred." Again, he said, "I do not recollect any such conversation having occurred ; the only time that insurance was ever mentioned to me to the best of my knowledge was on our property at the place." If Mr. Skinner had understood the arrangement as Mr. Houghton did, it would, as he said, certainly have impressed itself upon his mind, yet he swears positively that he has no recollection of such conversation and his testimony amounts to a denial of that of Mr. Houghton—although couched in polite language, it is sufficiently positive.

The policies were not altered and the companies were not notified of any change, but the insurance was continued as formerly. In order to justify the Court in reaching the conclusion that it was agreed between Mr. Houghton and Mr. Skinner that the appellant should no longer have any benefit of the insurance, it would require proof of a more convincing character than the above. It is true Mrs. Houghton could have cancelled the policies without the consent of the appellant, but it would not only be unreasonable to suppose that she had any idea of doing so before the purchase-money was paid, but in point of fact she did not do so. On the day of the fire they embodied the same terms, covered the same property and in terms insured the same interest as they did the day the option was accepted, and for reasons we have given above, as between the appellant and Mrs. Houghton, the money is justly due the former who sustained the loss and not the latter who has suffered no injury. Mr. Skinner's statement that he did not intend to carry insurance, as he would tear the buildings down, could of course only apply to the time when he got possession of the property and does not deprive the appellant of its right to the insurance money any more than the expectation of any owner of removing improvements would prevent recovery if a fire occurred before such removal. It might, under some circumstances, reflect upon the value of the property insured, but it would be of no avail, as a bar to the action,

for an insurance company, much less for one occupying the position Mrs. Houghton does, to prove that the owner of insured property destroyed by fire had previously announced his intention of tearing it down.

We are, therefore, of the opinion that as between these two parties, the appellant is entitled to any money received from the proceeds of insurance policies on the property. The insurance companies could waive any right they may have to take advantage of any change in the property, contrary to the provisions of the policies or other rights, and in the absence of fraud or other good reason it is commendable when they do not permit innocent parties to suffer loss through a misapprehension of their rights or duties under the terms of the policies. As our understanding is that six of the companies have waived the defenses set up by the others, we have thus considered the rights of the vendor and purchaser to the fund.

3. We now come to the defenses made by the German American Fire Insurance Company, of New York, and the Merchants' and Manufacturers' Fire Insurance Company, of Baltimore. The policies contain amongst others the following provision: " This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void * * * * * * if any change, other than by the death of an assured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment, or by voluntary act of the insured or otherwise." It is claimed that the contract of sale avoided the policies under that provision. Other defenses were made, but under the view we take of this provision it will be unnecessary to discuss them. We have determined above that the effect of the contract of sale, *after the option was accepted*, was to vest the beneficial interest in the property in the purchaser. It is true that such effect is only given to a contract of that character in a Court of equity, but can we give the appellant the benefit of such equitable doctrine and refuse to grant it to other parties to this cause ? The appellant is now asking the aid of a Court of equity to

enforce what it claims to be its rights, and it would, indeed, present a unique case if we should ascertain the *status* of the property to give the appellant any standing in Court and then decline to recognize that *status* in considering the defenses set up by these companies.   It must be certain that the appellant can have no remedy against them, unless it is worked out through Mrs. Houghton, and it has no claim against her excepting by the application of the equitable principles we have adopted above.   It cannot be permissible for us, in this case, to leave out of consideration the fact, which we have before us, that the appellant at the time of the fire did have the beneficial interest in the property insured, by virtue of the contract of sale (which we have determined at its instance), and we must, therefore, bear in mind that fact when we inquire into the effect of this provision in the policy, to see whether there was such a change in the interest, title or possession of the subject of insurance as made the policies void.

No precisely similar provision in a policy of insurance has heretofore been before this Court.   In *Kelly's case*, 32 Md. 421, it did hold that a mere contract for the sale of the insured premises, without delivery or possession, or execution of a deed therefor, with only a part of the purchase-money paid, was not a sale within the meaning of the provision that " if the said property shall be sold or conveyed, or if this policy shall be assigned, without the consent of the company obtained in writing hereon,   *   *   *   *   *   then this policy shall be null and void."   But there JUDGE MILLER said : " The provision in this policy is in the simplest and least stringent form prohibiting a *sale* or *conveyance*, terms of equivalent import with, and certainly not more comprehensive than ' alienation by sale or otherwise.' "   JUDGE ALVEY dissented in that case, but the majority of the Court thought it was not within the terms of the prohibition.   But the language used here is much broader than in that case—that which is particularly applicable, being "*if any change*, other than by death of an assured, *take place in the interest* of the subject of insurance." Can it be doubted that there was a change in the *interest* in

this property? As long as the insured has made no change in his estate in the property, a company may be perfectly satisfied to continue the insurance, but if he makes such a change as to divest himself of all interest in the property, excepting a vendor's lien for the purchase-money, and has a responsible party bound for the payment of that, he does not have the same motive for the protection of the property that he had before. In short, the insurer's risk is or may be increased by the change of the interest of the insured. As was said by JUDGE ALVEY in *Bowman* v. *Insurance Company*, 40 Md. 631: " The great purpose of all such provisions in policies of insurance is to enable the insurer to determine the extent of the risk, and the nature and extent of the interest of the insured in the premises." That expression was used in discussing the effect of a judgment against property when insurance was taken out under a policy that provided that " any incumbrance on the property hereby insured, whether existing at the time of issuing the policy or imposed subsequently thereto, must be assented to by the company; otherwise the policy shall be void." It was held that the policy was void by reason of the judgment lien not being disclosed. In *Westchester Fire Insurance Company* v. *Weaver*, 70 Md. 536, the policy was held to be void, because there was a mortgage on the property, there being a proviso that it should be void unless consent in writing was given " If the assured is not the sole and unconditional owner of the property  *  *  *  *  or if the interest of the assured in the property, whether as owner, trustee, consignee, factor, agent, mortgagee, lessee or otherwise is not truly stated in this policy."

The policies before us contain provisions, in addition to what we have already stated, that they should be void " if the interest of the insured in the property be not truly stated therein," and " unless otherwise provided by agreement and indorsed hereon or added thereto  *  *  *  if the interest of the insured be other than unconditional and sole ownership." There is no endorsement to the contrary and therefore it was represented to the companies that the *interest* of

the insured was "unconditional and sole ownership" when the policies were issued, and under the other provision any change in the interest held when the insurance was taken would invalidate the policy. It would certainly be placing a very liberal construction on these provisions, in favor of the assured, to say that after April 14, 1899, the interest of Mrs. Houghton was still an unconditional and sole ownership. She and her husband were then bound under their hands and seals to give the appellant a good and merchantable fee-simple title to the property within ninety days from April 14th. She was not then the *sole owner*, as the appellant then owned the equitable estate in the property and any loss by fire would be sustained by it. In equity it was regarded as the owner. There are a number of cases cited in note to 13 *Ency. of Law* (2nd ed.) 234, deciding that one who is in possession of real property under a contract to purchase, and not in default in the payment, is in equity the owner of the land and hence is entitled to insure as "sole and unconditional owner," and on page 235 of the same volume it is said "a vendor in a land contract who has admitted the vendee into possession is not sole and unconditional owner, although he retains the legal title." We do not understand why the possession of the vendee should make any difference in determining whether the vendor is the sole and unconditional owner. If the vendor conveys by deed all his interest and takes a mortgage for the purchase-money, but remains in possession, he would not be the sole and unconditional owner. And if he has done an act which vests another with such an estate as to make him sustain the loss, if destroyed or injured by fire, and cause him to be regarded in equity as the owner, as has been done here, how can it be said that the interest of the vendor is still that of *unconditional and sole* ownership?

The cases referred to under the first branch of this case, show that the purchaser is the owner, and there are many decisions to the effect that he is within the meaning of such provisions in policies the "sole owner." In *Imperial Fire Ins. Co.* v. *Dunham*, 117 Pa. St. 460, the principle is well stated and

many authorities are cited. In *Clay Fire and Marine Ins. Co.* v. *Huron Salt and Lumber Company*, 31 Mich. 346, it is said : " Certainly it cannot be claimed that a party holds by a sole, unconditional and entire ownership and title, when in truth another at the same time has so complete a right and interest that he may be rightly considered as owner ;" and it was there determined that the vendor was not such owner because he had made a contract of sale for the property under such circumstances as to make the purchaser the owner. If there had been such a provision in the policy before the Court in *Callahan* v. *Linthicum, supra*, a different result would doubtless have been reached in that case.

In *Gibbs* v. *Philadelphia Fire Insurance Company*, 59 Minn. 267 (s. c., 50 Am. St. Rep. 405), the provision in the policy as to change of interest was the same as in those before us and the Court held that the plaintiff could not recover. It was there said that the great weight of authority held that when the condition is against any change in the *title*, there is no breach unless there is a change in the *legal title*, but it was added "the word 'interest' is broader than the word 'title,' and includes both legal and equitable rights." See also *Germond* v. *Home Insurance Company*, 2 Hun. 540 ; *Arkansas Fire Insurance Company* v. *Wilson*, 67 Ark. 553, and 13 *Ency. of Law* (2nd ed.) 239, etc. In the *Encyclopædia of Law* the development of the clause against alienation is discussed and many authorities cited. When we remember the manifest object of such provisions and the explicit language used in these policies, we cannot escape the conclusion that a sale, such as was made by Mrs. Houghton, did render the policies void. It may be that great hardship is sometimes imposed on innocent persons, by reason of such provisions in insurance policies, but that does not justify Courts in refusing to enforce contracts, as made by the parties, if lawful. When the provisions are reasonable and tend to prevent incendiarism or carelessness, which may inflict losses upon other persons whose properties are in the vicinity, their language should at least be given its usual and ordinary meaning. When a sale of prop-

erty is thus made it is a simple matter to obtain the consent of the insurer, if his risk is not materially increased, and if it is so increased why should he be subjected to a hazard that he has not assumed? Until the offer of the Houghtons had been accepted, a different condition existed, but after it was, there was then a binding agreement on the one part to sell and on the other to purchase, and there was hence *a change of interest* in the subject of insurance. It is not necessary for us to determine in this case whether a judgment obtained *in invitum* or the mere filing of a mechanics' or other lien would work a forfeiture. Such questions are not before us.

4. There can be no recovery against the Westchester Fire Insurance Company, of New York, by the appellant. Under its own theory Mrs. Houghton had the power, as trustee, to collect the insurance money, and hence that company cannot be held responsible for paying it over to her.

The decree will be affirmed, in so far as it dismisses the bill against the Westchester Fire Insurance Company, of New York; the German Fire Insurance Company, of New York; the Merchants' and Manufacturers' Fire Insurance Company, of Baltimore City, and the Palatine Insurance Company, Limited, of Manchester, England, but it will be reversed in so far as it is dismissed as against Mr. and Mrs. Houghton. As the other five insurance companies have come into Court and offered to pay the proper party, the bill will be retained as to them. The amounts due can be ascertained and the Court below can then pass a decree against the Houghtons, requiring them to pay over what the Westchester Company has paid and the amounts received of the five companies if paid to them. That can be paid into the Court below by the companies in this case, if they so desire, as all persons interested are parties to it, and have requested the Court to dispose of all the questions.

It is but proper that Mrs. Houghton should be allowed all costs and expenses incurred by her in securing any of the fund she has received, or will receive, on account of the insurance, and that the costs be paid out of the funds in her hands. This

may include reasonable commissions on the amount she receives, if the Court below is of the opinion she is entitled to them under the facts that may be presented to it, or are within its knowledge.    There is not sufficient in the record to enable us to determine that.

> *Decree affirmed in part and reversed in part and cause remanded.    Caroline S. Houghton to pay the costs out of the insurance funds in her hands.*

(Decided December 7, 1900.)