C. F. BRADY, Appellee, v. M. R. WELSH, Appellee; J. T. WALTON, Intervener, Appellant.

**VENDOR AND PURCHASER:** Rights and Liabilities of Parties—Purchaser's Right to Insurance Money. A purchaser of land who has paid the full contract price may recover of the vendor the amount of insurance money collected by the vendor for a loss occurring on the property *after* the contract of sale was entered into, and *before* its final execution.

Headnote 1: 26 C. J. p. 437; 39 Cyc. p. 1644.

*Appeal from Black Hawk District Court.*—GEORGE W. WOOD, Judge.

JUNE 25, 1925.

ACTION in equity by the vendee, to recover insurance money paid to the vendor for the loss of buildings upon the premises sold, before final completion of the transfer. Decree for the defendant, Welsh, and against the plaintiff and the intervener. The latter, as the grantee of plaintiff, alone appeals.—*Reversed.*

*Birdsall & Birdsall,* for intervener.

*Senneff, Bliss, Witwer & Senneff,* for appellee Brady.

*McCoy & Beecher,* for appellee Welsh.

STEVENS, J.—This is an action by the grantee against the vendor, to recover a sum paid to vendor as insurance for the loss of a dwelling house by fire upon premises sold on contract, between the date thereof and its final consummation. The case was tried in equity upon an agreed statement of facts.

Before the time for the completion of the sale by the execution of a deed, the plaintiff, by contract in writing, agreed to convey the farm to J. T. Walton, who has intervened herein, claiming the benefit of the insurance. It appears from the stipulated facts that, on June 2, 1919, a contract in writing was entered into between Brady and Welsh for the purchase by the former of a farm of 160 acres in Buchanan County. Settlement under the contract was had, and possession given, on March 1, 1920. On June 19, 1919, Brady entered into a separate contract with intervener, agreeing to convey the property to him, which contract was also to be consummated March 1, 1920. On or about November 15, 1919, the dwelling house was totally destroyed by fire. At the time the contract was entered into, the building was insured in the name of appellee in the Farmers' Mutual Fire Insurance Company of Black Hawk County. On January 20, 1920, $1,000 was paid on this policy to appellee, which he still retains. Brady, on March 1, 1920, paid appellee the purchase price agreed upon for the farm in full; and this action is to recover the insurance paid.

The conflicting theories of respective counsel are each supported by authority, appellee contending that the theory advanced by him has already been adopted by this court. He contends,—and such appears to have been the view of the trial court,—that the contract of insurance was a mere personal contract between the insurer and the insured for his own benefit, and that upon no theory has appellant any interest therein, and that thereafter the proceeds of the policy belonged exclusively to him; whereas it is the view of counsel for appellant that, as the equitable title to the premises, upon the execution of the contract, passed immediately to the purchaser, the legal title being retained by appellee merely as security for the payment of the purchase price, the loss of the building fell upon appellant, and that, having paid the full purchase price, appellee holds the proceeds of the insurance as trustee only, and that appellant is now entitled to recover the same in this action.

It is the rule in England, and in a few jurisdictions in this country, that a contract of insurance, being one of indemnity, is personal between the insurer and the insured, and that the amount paid for a loss thereunder belongs solely to the vendor,

and that the vendee has no interest therein. 27 Ruling Case Law 560; 2 May on Insurance (3d Ed.), Section 450; *King v. Preston,* 11 La. Ann. 95. See, also, 26 Corpus Juris 351, Section 450. The great weight of authority in this country, however, favors the view for which appellant contends. The rule is well stated in 27 Ruling Case Law 559; 39 Cyc. 1644; 1 Warvelle on Vendors (2d Ed.), Section 193; 5 Joyce on Insurance (2d Ed.), Section 3569. The following cases are in point: *Skinner & Sons' Ship-building & D. D. Co. v. Houghton,* 92 Md. 68 (48 Atl. 85); *Williams v. Lilley,* 67 Conn. 50 (34 Atl. 765); *Kaufman v. All Persons,* 16 Cal. App. 388 (117 Pac. 586); *Brownell v. Board of Education,* 123 Misc. (N. Y.) 64 (204 N. Y. Supp. 150); *Smith v. Phoenix Ins. Co.,* 91 Cal. 323 (27 Pac. 738); *Phinizy v. Guernsey,* 111 Ga. 346 (36 S. E. 796); *Millville Aerie No. 1836 F. O. of E. v. Weatherby,* 82 N. J. Eq. 455 (88 Atl. 847); *Baker v. Rushford,* 91 Vt. 495 (101 Atl. 769); *Reed v. Lukens,* 44 Pa. St. 200; *Brakhage v. Tracy,* 13 S. D. 343 (83 N. W. 363).

Possibly in a few of the above cases the court's decision was influenced, to some extent, by the terms of the contract considered; but in each of them the doctrine stated is recognized with approval.

There can be no question, under all of the authorities, but that both the vendor and the vendee in a contract of sale by the terms of which the equitable title passes to the vendee, have an insurable interest in the property. Depreciation in the value thereof, whether by reason of fire which consumes the buildings or by other causes, must be borne by the vendee; likewise, any appreciation in value of the property belongs to him. The only loss suffered by appellee herein was such depreciation in his security as resulted from the destruction of the building by fire. He has been paid the full purchase price of the farm, and, if permitted to retain the money received by him as insurance, he will profit to that extent. The rule that the vendor who receives insurance money paid to him in settlement of the loss of a building by fire upon premises sold by him under an executory contract to convey after full payment of the purchase price, holds and retains the same as trustee for the vendee, is a wholesome one, and tends to effect justice between the parties.

The contention of appellee that this court has already adopted the English rule is based upon what is said in *Ayres v. Hartford F. Ins. Co.*, 17 Iowa 176; *Simeral v. Dubuque Mut. F. Ins. Co.*, 18 Iowa 319; *Merrett v. Farmers' Ins. Co.*, 42 Iowa 11; and *Davidson v. Hawkeye Ins. Co.*, 71 Iowa 532.

In each of the above cases, the insured, or the assignee of the policy, sued the insurer on the policy for the loss. In none of them was the doctrine of the English court involved or discussed. The defense in *Ayres v. Hartford F. Ins. Co.*, supra, was that the conditions and stipulations of the policy had been breached by a sale or transfer of the title to the property. Aside from the mere statement that a contract of insurance is a personal one, not running with the land, and that the insured must have an interest in the property destroyed, at the time of the loss, there is nothing in the decision of the court in any way applicable to the point before us. It is, of course, elementary that there can be valid insurance in favor only of one who has an insurable interest in the property. The same doctrine is declared in *Simeral v. Dubuque Mut. F. Ins. Co.*, supra, the court holding that a contract of insurance is a personal contract with the assured, and that the right of recovery does not pass to his assignee unless the insurer has given its consent to the assignment.

The only portion of the opinion of the court in *Merrett v. Farmers' Ins. Co.*, supra, which can have the slightest bearing upon the question before us is the discussion of the question as to what constitutes an insurable interest.

*Davidson v. Hawkeye Ins. Co.*, supra, is authority for our holding in *O'Brien v. Paulsen*, 192 Iowa 1351, that, under an executory contract to convey, a loss by fire of a building upon the premises must be borne by the vendee. This holding is, of course, in harmony with the majority rule on the subject. The real question, however, involved in the *Davidson* case was whether the policy was forfeited by the contract of the insured for the sale of the property without the written consent of the insurer, in violation of the specific terms of the policy. The court held that, as the equitable title passed to the purchaser, and as the consent of the insurer to the assignment had not been

obtained, the policy was forfeited. In discussing this question, the writer of the opinion said:

"Now, it is not to be denied that any vendor of real estate who has not received full payment, and retains the legal title for security, has an insurable interest. But it does not follow, we think, that there cannot be a sale of real estate where the legal title has not been conveyed, and a part of the purchase money remains unpaid. The very theory that the vendor who retains the legal title, with a right to enforce the payments of the purchase money, holds the legal title for security, is based upon the idea that there has been a sale; and in such cases it is manifest that a loss by fire must fall upon the purchaser *as owner*, and affects the seller only as it impairs his security. The seller may, indeed, have an insurable interest, but his interest is substantially that of a mortgagee, which is quite different from a proprietary interest. Different rates are charged; and in case of the insurance of a mortgage interest, and payment to the mortgagee of a loss, a right of subrogation accrues to the company to the extent of the amount paid. The law will not allow an insured mortgagee to be subjected to the temptation that he would be subjected to if he had a right to collect his insurance, and at the same time to collect and hold his whole mortgage debt besides. There is a fundamental and vicious error in the doctrine contended for by the plaintiff. He would collect the insurance upon the theory that there has been no sale, and would collect his purchase money upon a theory which is just the reverse. If the doctrine for which he contends is correct, he would be able to collect the full amount of his policy, though only a single dollar of the purchase money remained unpaid."

The illustration given proceeds on the theory that the result would be as assumed, but the point was neither involved nor decided. The language quoted was argumentative only. The question that must be decided upon this appeal, so far as anything is disclosed by the record in that case, was never even suggested to any member of the court. It is true that the *Davidson* case has been cited by a few courts, and by text-writers generally, as upholding the English rule. If it does in any respect do so, it is by the merest inference. Every case must be read with especial reference to the questions involved

and necessary to be decided. If the point had been involved in the *Davidson* case, even though not decisive thereof or decided therein, the language quoted might well be understood as a correct expression of the attitude of the court, as then constituted, upon the proposition. Even this would not make it binding upon the court as a precedent. When, therefore, the opinion is read with a clear understanding of the questions involved and decided, it by no means approves the English doctrine. Both reason and the great weight of authority sustain the opposite rule. We are, therefore, without further discussion, disposed to follow it.

The order of the court below dismissing the petition of intervention is, accordingly, reversed, and the cause remanded, with directions that judgment be entered in his favor in harmony with this opinion.—*Reversed and remanded*.

FAVILLE, C. J., and DE GRAFF and VERMILION, JJ., concur.