(Decided 11th March, 1869.)

JOHN A. K. BREWER *vs.* F. DORSEY HERBERT.

*Specific performance of a Contract for the Sale of a House and lot, where the house is destroyed by Fire before the day named for its Delivery to the purchaser—Insurable interest of the Purchaser in such property before the delivery of possession —Effect on the contract of a Judgment against the Vendor, on which an Appeal has been taken and appeal bond given.*

After the execution of a written contract for the sale of a house and lot, and before the day fixed for the delivery of the possession, and payment of the first instalment of the purchase money, the house was accidentally destroyed by fire, without fault of either party or of the tenant then in possession. The vendor had a fee simple title to the property, and at the proper time under the contract, offered to deliver possession of the premises in the condition in which they then were. This the vendee refused to receive. On a bill filed by the vendor for a specific performance of the contract, HELD:

1st. That from the time the owner of an estate enters into a binding agreement for its sale, he holds the same in trust for the purchaser, and the latter becomes a trustee of the purchase money for the vendor, and being thus in equity, the owner, the vendee must bear any loss which may happen, and is entitled to any benefit which may accrue to the estate in the interim, between the agreement and the conveyance.

2d. That the agreement on the part of the vendor, contained in the contract, to deliver possession of the house and lot on the day named therein, did not amount to a *condition* that the contract should be *void*, if there were any change in the state or value of the property on the day of delivery.

8d. That whilst it is conceded an application for specific performance is always addressed to the sound discretion of the Court, yet where a contract respecting real estate is in writing, and is in its nature and circumstances unobjectionable, it is as much a matter of course for a Court of Equity to decree a specific performance of it, as it is for a Court of Law to give damages for a breach of it.

4th. That the fairness or hardship of a contract like all its other qualities, must be judged of at the time it was entered into, not by subsequent events.

5th. That after the contract the vendee had an insurable interest in the house, and might have protected himself by insuring in his own name.

6th. That the vendor was not bound to keep up the insurance or to give notice to the vendee of its having expired, and his failure to renew or give notice could not deprive him of his right to enforce the contract of sale.

7th. That the fact, that at the date of the contract there was a judgment against the vendor, from which he had entered an appeal and given bond with ample security to pay the amount of the judgment with costs, in case he should fail to prosecute his appeal with effect, did not constitute a defect in the title which would prevent a specific execution.

APPEAL from the Circuit Court for Washington County, as a Court of Equity.

The bill in this case was filed by the appellee for an injunction to restrain proceedings at law, and for the specific performance of a contract. The appellee was the owner of a dwelling house and half lot of ground situate in Hagerstown, and sold the same to the appellant, on the 9th of October, 1865, by their agreement in writing, as follows, to wit: "Articles of agreement made and concluded this 9th day of October, 1865, between F. Dorsey Herbert and John A. K. Brewer, both of Washington county and State of Maryland, witnesseth, that in consideration of the sum of four thousand dollars, to be paid as hereinafter mentioned, the said Herbert

has this day sold to the said Brewer, his house and half lot of ground, situated on the corner of west Washington and Prospect streets, in Hagerstown; and the said John A. K. Brewer, on his part agrees to pay the said sum of four thousand dollars, as follows: Two thousand dollars on the 1st day of April, 1866; and one thousand dollars on the 1st day of April, 1867; and one thousand dollars on the 1st day of April, 1868, with interest from the 1st day of April, 1866; and the said Herbert doth further agree to give the said Brewer, possession of the same on the 1st day of April, 1866, and on payment of the whole purchase money, to make a good and sufficient deed for the same, clear of all incumbrances to the said Brewer. In witness whereof, the parties hereto have set their hands and seals, on the day and year first above written.

Signed: F. Dorsey Herbert, [Seal.]
J. A. K. Brewer, [Seal.]

Of the $2,000 to be paid by the agreement, on the 1st day of April, 1866, the appellant, at the request of the appellee, paid $1,000 on the 10th day of October, 1865. At the time of sale, the said premises were under lease by Herbert, to Dr. Berry, whose term expired on the 1st day of April, 1866. The appellee held a policy of insurance for $1,000 on the house at the time of sale, which was allowed by him to expire about the last of January, 1866. On the 5th day of February, 1866, the house was totally destroyed by fire, but without any fault on the part of the appellee, or his tenant, Berry. On Monday, the 2d day of April, 1866, the *first* being Sunday, the appellee made a tender of the premises, then a vacant lot, to the appellant, which he refused to receive in its destroyed condition. The appellant having refused to receive the ground, and holding that the appellee was unable to perform his part of the contract, by reason of the destruction of the house, brought suit on the law side of the Court, to recover from the appellee the said $1,000, so as aforesaid paid

to him. Whereupon, the appellee filed the bill in this cause to enjoin said proceedings at law, and for a specific execution of the agreement. The Court below, by its decree, enjoined said proceedings at law, and decreed a specific execution. From this decree the present appeal was taken.

The cause was argued before BARTOL, C. J., GRASON, MILLER and ROBINSON, J.

*Wm. T. Hamilton*, for the appellant:

Equity follows the law in the execution of contracts. Whilst matters of form are not required in Equity, matters of substance always are. It is one of the oldest and soundest principles of Equity, that he who invokes it in Court, must allege in his bill that he has done or has offered to do all that is required of him to be done by the contract. *Oliver vs. Palmer, &c.,* 11 *G. & J.,* 446; *Buchanan vs. Lorman,* 3 *Gill,* 77, 79.

At law an agreement like this, to deliver possession, is to be averred and performed as stipulated, in order to recover; and for the general principles as likewise applicable to cases in Equity, *vide Bacon vs. Simpson,* 3 *Meeson & Wells,* 77, 78; *Thompson vs. Gould,* 20 *Pickering,* 134.

This is an inchoate contract. The appellee sells, remains in possession of the property, deriving the rents and profits therefrom, is secure in the insurance, and in all things reaps the advantage whilst having the care of the property. The appellant agrees to pay as stipulated, and the appellee further agrees to give possession of the thing or matter sold. All these stipulations are of substance, and must be observed and performed to make the agreement obligatory and perfect. And the right is not perfect in either, until either or both have performed or offered to perform what is required by it. By analogy the same principles laid down in *Musgroves vs. Cohen,* 6 *Gill,* 102, may be applied to this case.

The specific execution of a contract in equity, is not a matter of absolute right, but of sound discretion in the Court.

The contract must be certain, equal and capable of being performed. The party who asks a specific performance must aver and show performance, or readiness to perform every thing required of him by the contract. *Rider, &c., vs. Gray, et al.*, 10 *Md.*, 286; *Dorsey vs. Hobbs,* 10 *Md.*, 412; *Smoot vs. Rea & Andrews,* 19 *Md.*, 405; *Carr & Wife vs. Hobbs,* 11 *Md.*, 285; *Ragan vs. Gaither,* 11 *G. & J.*, 488; *Weems vs. Brewer,* 2 *H. & G.*, 390.

Under these rulings the vendee must have the thing sold. The contract, to be equal, must oblige the vendor to give what he sold and agreed to give. The covenant in the agreement to give possession, is tantamount to the averment to give possession on the day named, the property to be in the same reasonable condition as when sold. The latter certainly would be a covenant of substance, and would be required to be performed.

*A. K. Syester*, for the appellee:

The appellant has the right to rescind this contract, because notwithstanding the contract and memorandum in writing was signed by the parties, yet *the title* did not actually pass to the vendee, and the premises did not become his until there was an *actual delivery*, and that inasmuch as a delivery of the *entire thing* sold could not be made in the same plight and state it was at the time of the contract, he is thereby released from his obligation to pay, and no title or property ever passed. *Franklin and Armfield vs. Long,* 7 *G. & J.*, 418; 2 *Powell on Contracts,* 63.

The signing of the contract in equity vested the whole equitable estate in the vendee, and upon his payment of the purchase money entitled him to the legal estate. *Hampson vs. Edelen,* 2 *H. & J.*, 64. In equity, the *property* and *estate* was the vendee's. He could have sold it. It was devisable—and upon his death intestate, would have descended to his heirs. 2 *Story's Eq., sec.* 1212.

There is no pretense that the *title* was defective, or that the vendor was not seized of the estate he had sold.

With regard to events happening in the case of *private contracts,* respecting the sale of real estate after they are signed, the question on whom the loss or advantage falls, is to be decided ·by whether or not the *title* was *good* and *accepted.* By the signing of the agreement, the contract in equity is considered as executed; from that instant the title to the property is changed, and whatever casualties fall upon it should be borne by the new owner, and whatever advantages accrue arise for him. 2 *Powell on Contracts,* 69 ; 1 *Sug. on Vendors,* 226, 330, 337, 388 ; *Dart on Vendors and Purchasers,* 117; *Skelton vs. Robertson,* 12 *Beav.,* 260 ; *Paine vs. Meller,* 6 *Ves.,* 349 ; 2 *Story's Equity,* sec. 790 ; *Harford vs. Purrier,* 1 *Madd. Ch.,* 287 ; *Wyvill vs. Bishop of Exeter,* 1 *Pri.,* 292, 295, *note ; Revell vs. Hussey,* 2 *Ball. & Be.,* 287.

The suggestions of the appellant respecting the insurance, are wholly out of this case, because :

There was no agreement by the vendor to keep the property insured, nor was there any proposition to the purchaser grounded on its being kept insured. And in such case the vendor is not bound to keep up the insurance, or to give the purchaser notice of its having expired. *Paine vs. Meller,* 6 *Ves.,* 353 ; 1 *Sug. on Vend.,* 337 ; *Rawlins vs. Burges,* 2 *Ves. & Bea.,* 387.

" Where a *contract* respecting real property is, in its nature and circumstances, *unobjectionable,* it is as much a matter of course for Courts of equity to decree a specific performance of it, as it is for a Court of law to give damages for the breach of it." 2 *Story's Eq.,* sec. 751 ; *Smoot vs. Rea & Andrews,* 19 *Md.,* 405 ; *Bennett vs. Smith,* 10 *Eng. L. & Eq.,* 274.

The nature, &c. of the contract must be judged of as of the time it was entered into; if it be *then* fair, reasonable and just, it is immaterial that it may by force of subsequent circumstances or change of events become less beneficial to one party, unless these subsequent events are due in some way to the party seeking the specific performance. *Lawder vs. Blachford, Beat. Chancery,* 522 ; *Webb vs. The Direct London &*

*Portsmouth R. R. Co.*, 9 *Hare*, 129 ; *Dyas vs. Cruise*, 2 *J. & Lat.*, 460 ; *Low vs. Treadwell*, 3 *Fairf.*, 441.

The introduction into this case of the fact of the incumbrance, cannot in any way effect the right of the appellee.

Equity will not indeed compel a vendee to take an imperfect or defective *title*, as was the case in *Dorsey vs. Hobbs*, 10 *Md.*, 412, and *Buchanan vs. Lorman*, 3 *Gill*, 77, neither of which were for specific performance. Yet it will still compel him to take one subject to a pecuniary charge against which adequate security has been given. *Thomson vs. Carpenter*, 4 *Barr.*, 132. Beside the appellee had given approved and ample security, and the case was pending and undetermined. But independent of the fact that ample and adequate security had been given, the Court will enforce the agreement where a perfect *title* can be *made at the time of the decree.* *Pierce vs. Nichols*, 1 *Paige*, 244 ; *Seymour vs. Delancey*, 3 *Cowen*, 446 ; *Baldwin vs. Salter*, 8 *Paige*, 473.

MILLER, J., delivered the opinion of the Court.

After the execution of the written contract for the sale of the house and lot, and before the day fixed for delivery of possession and payment of the first instalment of purchase money, the house was accidentally destroyed by fire, without fault of either party or of the tenant then in possession of the same. The vender had a fee simple title to the property, and at the proper time, under the contract, offered to deliver possession of the premises in the condition in which they then were. This the vendee refused to receive because of the destruction of the house by fire, and the main question in the case is, can he on this ground successfully resist this application in equity by the vendor for a specific performance of the contract?

In contracts of this kind between private parties, the vendee is in equity the owner of the estate from the time of the contract of sale, and must sustain the loss if the estate be destroyed between the agreement and the conveyance, and will be enti-

tled to any benefit which may accrue to it in the interim. This doctrine, notwithstanding the *dictum* in *Stent vs. Bailey*, 2 *P. Wms.*, 290, to the contrary, was plainly announced and settled by the decision of LORD ELDON, in *Paine vs. Meller*, 6 *Ves.*, 349, a case very similar in its circumstances to the present, where it was held that if there was no objection to the title of the vendor, or it had been accepted in fact by the vendee before the houses were burned, no solid objection to the bill for specific performance could be founded on the mere effect of the accident before conveyance: ".for if the party," says the Lord .Chancellor, "by the contract has become in equity the owner of the premises, they are his to all intents and purposes. They are vendible as his, chargeable as his, capable of being encumbered as his; they may be devised as his; they may be assets; and they would descend to his heir." This decision has always been regarded as fixing the true equitable rule in such cases. It was recognized by Sir THOMAS PLUMER, in *Harford vs. Purrier*, 1 *Madd. Ch.*, 287, and in *Rawlins vs. Burgis*, 2 *Ves. & Bea.*, 387, and by LORD CHANCELLOR MANNERS, in *Revell vs. Hussey*, 2 *Ball & Beatt.*, 287. From these and other authorities of equal weight announcing the maxim that equity regards as done that which was agreed to be done, is deduced as the established doctrine in equity, that from the time the owner of an estate enters into a binding agreement for its sale, he holds the same in trust for the purchaser, and the latter becomes a trustee of the purchase money for the vendor, and being thus in equity the owner, the vendee must bear any loss which may happen, and is entitled to any benefit which may accrue to the estate in the interim between the agreement and the conveyance. 1 *Sug. on Vend.*, 228, 388 to 391; 2 *Powell on Cont.*, 69; *Dart on Vend. & Purchasers*, 114 to 118; 2 *Story's Eq.*, sec. 1212. The contract here is not for a *sale* at a future day; it does not use in this respect prospective or contingent terms. Its language is, the vendor "*has this day sold to*" the vendee his house and lot, which clearly imports a binding contract *then*

executed and consummated. By such terms the *title* in equity passes from the date of the contract, and if there were nothing else in it there would be no room for argument, for it would be impossible to withdraw the case from the operation of the rule above stated.

But it has been earnestly and strenuously urged by the appellant's counsel, that as the contract contains an agreement by the vendor to deliver possession of the house and lot to the vendee, on the first of April, 1866, the destruction of the house by fire before that period, rendered performance by the vendor of this part of the contract impossible, and he cannot, therefore, either in law or equity, ask the vendee to perform his part of it; and this circumstance, it is insisted, distinguishes the case from those cited, and prevents it from falling within the principle established by them. Let us test the soundness of this argument. The vendee knew before and at the time of the contract there was a tenant in possession, whose term would not expire until the first of April, and the first instalment of the purchase money is made payable on, and interest on the deferred payments runs from that day. The subject matter of sale is *realty*—a lot of ground with a house upon it, described as a house and lot. The agreement as to delivery is not like the usual covenant by a tenant in a lease, to deliver in as good condition and repair as when the contract was made. There is also no difficulty about delivery, except that the premises were not, as to the buildings upon them, in the same condition as at the date of the contract. The question then resolves itself into this, does the fact of the insertion into a contract like the present for the sale of real estate, of an agreement to deliver possession at a future day, make any difference in the application of the rule? It is true it does not appear in the cases cited there were in the contracts any stipulations as to delivery of possession at a future day, nor is this circumstance alluded to, but they explicitly say it is the passing of the *title* in equity which throws the risk of loss upon the vendee, and entitles

him to accruing benefits. To this, as we have seen, a conveyance is not necessary, nor is payment of the purchase money or any part of it; for in *Hampson vs. Edelen*, 2 *H. & J.*, 66, this Court has decided that "a contract for land *bona fide* made for a valuable consideration, vests the equitable interest in the vendee from the time of the execution of the contract, although the money is not paid at that time." See also *Siter, James & Co's Appeal*, 26 *Penn. State, Rep.*, 180. Neither can possession nor delivery of possession be necessary, for if the contract had been silent on this subject, the vendor would have had the right to retain possession at least until the first of April, when the first instalment of the purchase money was payable, and if the vendee had obtained possession before, he would have been restrained in equity from exercising any acts of ownership prejudicial to the inheritance; (*Crockford vs. Alexander*, 15 *Ves.*, 138; *Reed vs. Lukens*, 44 *Penn. Rep.*, 202,) and yet the equitable title would all the while have been in him, subject to his disposition by deed or will, and liable for his debts. If then in the absence of a stipulation to deliver at a future day, there is an implied right in the vendor to retain possession until that period, and this would make no difference as to the liability of the vendee for an intermediate loss, how can the insertion of such a stipulation have in equity any different effect? The whole foundation of this doctrine of equity is that the equitable title and interest passes by the *contract* of sale, and from the *time of its execution*, and it contemplates delivery of possession as well as payment of purchase money, and a conveyance at a future period. Hence, Sir EDWARD SUGDEN and Sir THOMAS PLUMER both cite, as in exact accord with the decision of LORD ELDON, the rule of the civil law, where the very case is put in the Institutes: " *Cum autem emptio et venditio contracta sit, periculum rei venditæ statim ad emptorem pertinet, tametsi adhuc ea res emptori tradita non sit: Itaque, si ædes totæ vel aliqua ex parte incendio consumptæ fuerint—emptoris damnum est, cui necesse est, licet rem non fuerit nactus, pretium solvere.*" In

sales of personal property, delivery of the goods sold is not necessary to pass the title as between the parties, where the statute of frauds has been gratified by giving something in earnest, or payment of the whole or part of the purchase money, or a sufficient note or memorandum in writing of the bargain; and in such case the property is at the buyer's risk before delivery. *Franklin & Armfield vs. Long,* 7 *G. & J.,* 418. And even where the seller remaining in actual possession *agrees to deliver* the property at a particular place, and it is destroyed by fire before such delivery, the loss will fall on the purchaser. *Terry vs. Wheeler,* 25 *N. Y. Rep.,* 520. Where sales are made under authority of a Court, the contract is not regarded as consummated until it has received the Court's sanction or ratification, and, therefore, any loss happening before confirmation falls upon the vendor. *Ex parte Minor,* 11 *Ves.,* 559; *Wagner & Marshall vs. Cohen,* 6 *Gill,* 102. But where a loss occurs after confirmation, by which the contract is consummated, it falls upon the vendee, even though no purchase money has been paid, and the vendor remains in possession. This was expressly decided in *Robertson vs. Skelton,* 12 *Beav.,* 260, where LORD LANGDALE also said: "In equity the estate belongs to the purchaser from the date of the order to confirm the report, and the right of possession belongs to the vendor till the purchase money, for which it is security, has been paid." Again, if we look to the contract itself, and gather therefrom the intent of the parties, it is clear from the language used, their intention was that the equitable title and interest should pass from the day of its execution. Upon this point its terms are too positive and explicit to admit of doubt. Delivery of possession and payment of purchase money were postponed to a future day for the convenience of each party respectively, and we cannot construe the agreement to deliver, into a *condition* that the contract shall be *void* if there is any change in the state or value of the property on the day of delivery, nor interpolate any such words into the instrument. We are,

therefore, constrained to hold the argument founded on this delivery clause, to be unavailing to the appellant.

But it is said specific execution of contracts is in all cases not a matter of absolute right, but of sound discretion in the Court, and as the vendor cannot now deliver the house which was the main inducement to the vendee to buy, and constituted the chief value of the property, it would be inequitable to enforce the contract as against him. If this objection were sound, this doctrine of losses and benefits could never have been established. But whilst it is conceded an application for specific performance, is always addressed to the sound discretion of the Court, yet where a contract respecting real estate is in writing, and is in its nature and circumstances unobjectionable, it is as much a matter of course for a Court of equity to decree a specific performance of it, as it is for a Court of law to give damages for a breach of it. *Smoot vs. Rea & Andrews,* 19 *Md.,* 405 ; 2 *Story's Eq.,* sec. 751. "The fairness or hardship of a contract like all its other qualities, must be judged of at the time it was entered into, not by subsequent events." If it was *then* certain, mutual, fair in all its parts, and for an adequate consideration, it is immaterial that by force of subsequent circumstances, it has become less beneficial to one party unless such change is in *some way the fault* of the party seeking its specific execution. *Revell vs. Hussey,* 2 *Ball. & Beatt.,* 288; *Lawder vs. Blachford, Beatty's Rep.,* 526; *Webb vs. Railway Co.,* 9 *Hare,* 129; *Low vs. Treadwell,* 3 *Fairfield,* 541; *Fry on Specific Performance,* 93, 98. Adherence to principle compels the Courts to overlook the hardship of particular cases. But the doctrine upon which this decision rests, is founded in strict justice and equity, for whilst the vendee may think it hard to be compelled to pay for that which he cannot have in the condition it was when he purchased, the vendor, with equal justice, might think it hard to lose his money after a *bona fide* sale of his property, because of an accident accruing to it without fault on his part. It is to be remembered too that whilst the rule burthens the vendee

with a loss, it also entitles him to all benefits.　Thus where a reversionary interest is agreed to be purchased and lives drop, or one agrees to purchase an estate in consideration of a life annuity to the vendor, and the *cestui que vie* dies, or where there is a sudden rise in the value of the land from its being required for a public purpose, before conveyance, in all such cases the vendee reaps the benefit.　So in the case before us, if a valuable mine had been discovered on the premises the day after the contract, or by any unforseen or unexpected circumstances their value had been increased a hundred fold, the benefit would have resulted to the vendee, and the vendor could not have been released from his contract.　We cannot therefore, sustain this objection to the bill.

It appears that at the date of the contract the vendor held a policy of insurance upon the house, which by accident he allowed to expire without renewal before the fire, and of this the vendee received from him no notice.　A similar state of facts existed in *Paine vs. Meller*, and was held to constitute no objection to the vendor's bill.　It is admitted there was no understanding between the parties that the vendor should keep the policy alive.　They did not contract on any such basis.　After the contract the vendee had an insurable interest in the house and in the absence of all agreement on the subject, the presumption is, he intended to protect himself by insuring in his own name, or to take the risk of a failure to insure.　The vendor was not bound to keep up the insurance or give notice to the vendee of its having expired.　If the policy had existed at the time of the loss, the vendor could have recovered from the insurance company, but being trustee of the premises for the vendee, he would be bound in equity to account to the latter for the money so received, (*Reed vs. Lukens*, 44 *Penn. Rep.*, 200;) but his failure to renew or to give notice cannot deprive him of his right to enforce the contract of sale.

It also appears there was at the date of the contract a judgment against the vendor for $2,363.38, but he had at that

time entered an appeal from the judgment to the Court of Appeals, and given an appeal bond with security amply sufficient for that purpose to pay the amount of the judgment with costs, in case he should fail to prosecute his appeal with effect. The authorities are clear that equity will not compel a vendee to take an imperfect or defective *title*, yet cases of high authority are to be found in which a pecuniary charge against which adequate security has been given, has been held not to constitute a defect in *title*, and also where equity has enforced the agreement where a perfect title can be made at the time of the decree. But this judgment thus appealed from, with appeal bond given, does not in the sense in which Courts of equity use the terms, make this such an imperfect, or defective, or encumbered *title*, as will prevent specific execution, and especially not where the decree itself, as that appealed from in fact does, can protect the vendee by providing that the judgment debt may be paid by him out of the purchase money due on the contract and in discharge thereof.

We have bestowed upon the case our best care and consideration. We find nothing in the authorities cited by the appellant's counsel sufficient to overthrow the doctrine upon which we have based our decision, and can discover no ground upon which in justice and equity, the appellee can be denied the relief he seeks. The decree must be affirmed.

*Decree affirmed.*

(Decided 11th March, 1869.)